BLANCHE E. BOURGEAT, wife of A. PLAUCHÉ, *v.* CONSTANCE DUMOULIN
AND HUSBAND.

A donation *inter vivos*, in which the donor makes a reservation in favor of himself of an annuity
sufficient for his subsistence according to his previous habits and condition in life, is not a donation
" *omnium bonorum,*" prohibited by Article 1484 of the Civil Code.

APPEAL from the District Court of West Baton Rouge, *Robertson,* J. Tried
by a Jury. *U. B. & E. Phillips* and *W. H. Cooley,* for plaintiff and ap-
pellant. *Louis Janin* and *Provosty & Farrar,* for defendant.

SPOFFORD, J. This suit was brought by one of the collateral heirs of *Onil
Bourgeat,* deceased, to annul an act of donation *inter vivos,* made by said *Onil
Bourgeat* to the defendant, his sister-in-law, nearly a year before his death.
The plaintiff has appealed from a judgment rendered upon the verdict of a
jury in favor of the defendant.

The donation is formal upon its face, but the appellant maintains that it was
absolutely null, because it was a donation *omnium bonorum,* prohibited by the
Article 1484 of the Louisiana Code: "The donation *inter vivos* shall in no case
divest the donor of all his property (dépouiller entièrement le donateur); he
must reserve to himself enough for subsistence; if he does not do it, the dona-
tion is null for the whole."

The fact that it was a donation *omnium bonorum* is denied by the appellees.
It appears that some household furniture, a horse, a watch, &c., and a claim to
a tract of land in St. Landry, which had never been reduced to possession by
the donor, were not embraced in the donation. Moreover, the act itself makes
the following reservation in favor of the donor: "La présente donation est ainsi
faite à la charge ci-après expliquée savoir: que la demoiselle donataire s'oblige
par ces présents, solennellement et fidèlement, de donner chaque année au sieur
donateur une somme de quatre cents piastres et pendant toute sa vie pour le
soutien et l'entretien du dit sieur donateur et en outre à cause de l'attachement
et de l'amitié que le dit sieur donateur porte à la dite demoiselle donataire, et
parceque telle est la volonté du dit sieur donateur."

It is in proof that the sum of four hundred dollars annually would have been
quite sufficient for the subsistence of the donor, according to his previous habits
and to his condition in life; that he was passionately addicted to hunting, and
spent much of his time in the woods; that the land and slaves which form the
subject of this donation, for many years previous thereto had failed to yield him
a net revenue much exceeding the sum of four hundred dollars, and sometimes
not so much; and that he could live more comfortably and to his tastes with a
fixed income of this sum, and without the cares of a planter's life; than by re-
taining the property with its precarious and fluctuating revenues.

But it is contended by the appellant that the Article 1484 contemplated a
reservation of property in kind, and that this annuity or charge cannot be con-
sidered as property in the sense of that Article. This construction would be
too narrow; it is not even borne out by the literal terms of the French text; it
does not represent the fair meaning of the English text.

By a donation with the reserve of an annuity a man might render his sub-
sistence for life more sure and ample than by retaining the property itself, and

a donation under such a charge is not prohibited, as is the donation with a reserve of the usufruct to the donor. C. C. 1520.

Donations *inter vivos* are liable to be revoked or dissolved for the non-performance of the conditions imposed on the donnee. C. C. 1546.

"In case of revocation or rescission on account of the non-execution of the conditions, the property shall return to the donor free from all encumbrances or mortgages created by the donee; and the donor shall have, against any other persons possessing the immovable property given, all the rights that he would have against the donee himself." C. C. 1555.

"In all cases in which the donation is revoked or dissolved, the donee is not bound to restore the fruits by him gathered previous to the demand for the revocation or rescission. But in case of the non-fulfilment of conditions which the donee is bound to fulfil, if it be proved to have proceeded from his fault, he may be condemned to restore the fruits by him received since his neglect to fulfil the conditions." C. C. 1562.

The punctual payment of the annuity is thus fully guarded by law, and unless it be paid, all the property donated reverts to the donor unincumbered by any act of the donee.

The annuity thus guarded is itself a property, and the donor reserving it has not stripped himself *omnium bonorum*. He remains his own master, with an income to spend as he pleases.

We do not question the correctness of the decision of the case of *Lagrange* v. *Barré*, 11 Rob. 302, which is relied upon by the appellant. The donor there reserved no property, nor any sum of money to be paid to himself; he threw himself upon the bounty of his donee; he reduced himself to the condition of a penniless man, dependant for food, clothing, medical attendance, and the other necessaries of life, upon the promised gratitude of the person to whom he gave his all; the very imprudence which it was the object of the prohibitory law to remedy. The court rightly held that "the law-maker never intended that on a simple stipulation of alimony a man should divest himself of all his property by donation *inter vivos*."

The only question then must be one of fact: was the sum of four hundred dollars a year enough to support the donor in his condition in life? The jury found that it was, and our perusal of the evidence has led us to the same conclusion.

The judgment is, therefore, affirmed.